**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**MELVIN CHANDLER** **PLAINTIFF**

**VS.** **CIVIL ACTION NO. 3:12CV519LRA**

**SHERIFF TYRONE LEWIS, ET AL** **DEFENDANTS**

---

**MEMORANDUM OPINION AND ORDER**

This case came before the Court for trial on July 1, 2014. Testimony on the issue of exhaustion was presented, and the Court reconsidered its prior ruling denying Defendants' Motion for Summary Judgment [36]. Testimony was also given on the merits of the case by Plaintiff and his witnesses, Stacy Berry, Lawrence Adams, and Jerome Banks. Sheriff Tyrone Lewis and Captain Michael Ivy testified on behalf of Defendants. Plaintiff's medical records and inmate file were admitted into evidence [59-1, 2, 3].

**Exhaustion**

Defendants' motion for summary judgment based upon Chandler's failure to exhaust his administrative remedies was denied without prejudice in that Memorandum Opinion and Order [36] filed on September 26, 2013. Defendants reurged the motion at the trial and gave testimony supporting their contention that Chandler failed to exhaust. The Court has considered the evidence regarding exhaustion, including Chandler's testimony at the trial and at the prior hearings conducted by this Court. The Court finds that Plaintiff has failed to exhaust his administrative remedies, and his Complaint must be dismissed on that basis.

Chandler testified that he attempted to exhaust on many occasions by writing letters to various people, including Attorney General Jim Hood, Circuit Clerk Barbara Dunn, and Defendant Captain Michael Ivey. He testified that it did not help to ask for a grievance form and to fill them

out and turn them in to the deputies because "you got no response." Yet, his inmate file contains no evidence that he filed any grievances regarding the conditions, and he testified that he had no proof of any grievances he filed. However, two of Plaintiff's witnesses testified that they were aware of the grievance program and that they knew how to fill out grievances. Both Berry and Adams testified that they were shown the grievance procedures and Berry had utilized it.

Defendant Captain Ivey testified that he worked from about 1998-2013 at the Hinds County Detention Facility [HCDF] and that he was captain over the facility when Chandler was housed there. He knew Chandler personally, as they had lived in the same town approximately one mile from each other. He does not recall that Chandler ever made him aware of any medical problems. Captain Ivey testified that the Handbook [Exhibit 6] was made available to the inmates and that it contained the grievance procedures beginning at page 16. Chandler would have had access to the handbook in the housing unit. When Captain Ivey came to the jail, he realized that not every inmate had a copy of the handbook. Because of this, he made hundreds of handbooks to be distributed to be certain that all inmates had them. Grievances could be written on any type of paper. Locked boxes were available in the housing units for a period of time for inmates to place grievances in. The inmates destroyed these boxes, so for a short time there were none. Thereafter, the facility built boxes on rollers, and the boxes were rolled into the housing units for inmates to file grievances. Only the facility commander had a key, and that was Captain Ivey. If the box was not there, Captain Ivey testified that he would personally take them. He was in the housing units for about 50% of his time, so inmates could find him easily. Captain Ivey testified that he would personally handle the grievances. If the inmate was dissatisfied, he could write to Chris Picou, the undersheriff, and then the Sheriff. The handbook explained the appeals process.

At the omnibus hearing, when questioned about whether he had presented his claims through the Detention Center's grievance program, Chandler testified as follows:

> CHANDLER: You know, I tried to contact through the other – the administrative remedy program. Hinds County don't have one. Raymond Detention Center don't have one as far as I know because I have talked to – you know, to my military training, I went to follow your chain of command. I assume that's what you're talking about. You start from the lowest and go to the top.
>
> COURT: Did you ask for grievance forms?
>
> CHANDLER: They don't go no further than the pod, ma'am. He got a box. You write your grievance forms, turn them in to the deputies, they don't go no further. You don't get no response from no grievance form.
>
> COURT: They give you the forms?
>
> CHANDLER: You fill them out.
>
> COURT: If you ask for them?
>
> CHANDLER: Fill them out, turn them in, you don't get no response from them.

Later in the hearing, Chandler testified that he wrote several letters to Captain Ivey about the conditions at the facility, but never got a response from him.

At the trial, Chandler testified that he wrote various officials, including Jim Hood, Barbara Dunn, and Captain Michael Ivey about the conditions, but he got no response from them.

The Court finds that Defendants have proved by a preponderance of the evidence that Plaintiff failed to exhaust his administrative remedies and that such remedies were available to him. Chandler admits that he has no evidence of any written grievance he filed while housed there; his primary contention is that such a grievance would have been ignored. An inmate must comply with a facility's grievance procedure before he can bring his conditions of confinement case to court. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Here, Chandler does not contend that he raised his claims

through the official Inmate Grievance Procedure of the Hinds County Detention Facility, but he does maintain that he sent many complaints to various officials but got no response. Where a prisoner alleges that he could not exhaust his administrative remedies because the grievance procedure is inadequate, he may be excused from the exhaustion requirement. *McDonald v. Cain*, 426 F. App'x 332, 333 (5th Cir. 2011); *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) ("We have recognized, as a basis for excuse, circumstances where administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy.") (citing *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982)).

The PLRA governs all of Chandler's claims. Accordingly, he was required to complete the HCDF grievance procedure in its entirety before filing suit under § 1983. The requirement of exhaustion applies regardless of a plaintiff's opinion on the efficacy of the institution's administrative remedy program. *Alexander v. Tippah County, MS*, 351 F.3d 626, 630 (5th Cir. 2003). It is not for this Court to decide whether the procedures "satisfy minimum acceptable standards of fairness and effectiveness." *Booth v. Churner*, 532 U.S. 731, 740 n. 5 (2001).

The Fifth Circuit has confirmed that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal*, 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*). Considering the evidence presented at trial, this Court finds that Defendants have rebutted Chandler's assertion that the grievance procedure is inadequate or that he did exhaust. Simply alleging that it would not have helped to file an official grievance is not enough to excuse the requirement under the law. The testimony of Captain Ivey and Chandler, as well as Chandler's

witnesses, coupled with Chandler's inmate file, confirm that he did not officially attempt to exhaust his remedies. Writing Attorney General Jim Hood or Circuit Clerk Barbara Dunn is not part of the HCDF's grievance procedures. Accordingly, this case must be dismissed on the non-exhaustion issue.

In an abundance of caution regarding the exhaustion issue, and because testimony and evidence has been presented on the merits, the Court has also considered the merits of Chandler's claims, as set forth hereinafter.

**Conditions of Confinement**

The evidence revealed that Plaintiff Melvin Chandler was housed as a pretrial detainee at the HCDF from April 2, 2011, to May 11, 2012, or for a total of 369 days. Thereafter, he plead guilty to aggravated assault and is now housed in the custody of the Mississippi Department of Corrections [MDOC] at the South Mississippi Correctional Institution [SMCI] in Leakesville, Mississippi. Chandler testified that the conditions in which he was confined violated his constitutional rights. Specifically, Chandler stated that he was forced to sleep on mats on the floor with no sheets or pillows. The mats were not cleaned when passed from inmate to inmate. He complained that inmates were only issued one jumpsuit, one towel and one blanket, and that when these were turned in once a week for cleaning, inmates had nothing to wear during that time and could not go to get medications. The Sheriff took out the hot water machines in the jail, and the drinking water was horrible. The Sheriff took out all mirrors. There was no air conditioning, and the only ventilation was from under the door. The zone smelled badly, as the sanitation was poor. They never changed the heads on the mops, and there was human waste on the floor. After mopping the waste, the same mop was used again. His food was poor, with the last meal being a bologna sandwich at 4 p.m.

They got molded bread and Danish rolls. The meals were slipped under the doors without plastic bags. The inmates could not go out for recreation if it rained, and the floor leaked when it rained. He did not get much sunlight.

Plaintiff also complained about his medical care while housed at HCDF. Chandler alleged that the manner in which he was handcuffed and transported to the Detention Center without a seatbelt caused him to suffer torn ligaments in one shoulder, for which he has not been adequately treated. Several medications that he took for chronic conditions had been discontinued. He had torn ligaments, pinched nerves, and arthritis. He took pain pills every day and had his shoulder injected, but he did not always receive his medicines. He testified that he needed surgery for his shoulder but HCDF would not provide it. Plaintiff confirmed on cross-examination that he was seen by HCDF physicians, Dr. Tatum and Dr. Sutton, approximately 21 times. He was seen at least three times by an orthopedic surgeon, Dr. Dan Dare, and his nurse practitioner. He was also taken to a podiatrist, an ophthamologist, and an oral surgeon during the period he was housed at HCDF. Chandler testified that although he was examined by these medical personnel, he was never given the proper treatment thereafter.

Chandler testified that he received spiders bites while at HCDF and that the mold in the cells caused him to have problems with his ears. He contends that he was assaulted on one occasion by other inmates and that he feared for his life. However, this allegation was not in the Complaint, and Defendants objected for that reason. The Court finds that evidence of this assault claim shall not be admitted, as Chandler did not sue for any assault to him by other inmates.

In support of his claims, Plaintiff presented his own testimony as well as the testimony of his witnesses, Stacy Berry, Lawrence Adams, and Jerome Banks. These witnesses testified

generally about the conditions of confinement while they were housed at HCDF. Berry conceded that he was released from HCDF before Sheriff Lewis and Captain Ivey arrived at HCDF. He testified that while he was housed there, inmates had no mats in booking; that inmates were only issued one jumpsuit, and the inmate was naked while it was being washed; that Chandler would go several days without medications. He also confirmed that he submitted many grievances while housed there, and that Major Rushing and Captain Wilburn responded to his grievances. Lawrence Adams testified that the mopheads were not changed; that food was slid under the door without wrapping; that an inmate could not get medication when his jumpsuit was washed; that there were rats and roaches at the jail. Adams testified that he was aware of the grievance procedures at the jail, but he never filed one. He did write Sgt. Williams about losing his glasses, but he never got them back.

Defendant Michael Ivey testified regarding the hygiene policy at that jail. He stated that there had been some mold at the jail, but that unit was not used. He had assigned someone to clean the mold with the proper solution and then to seal it. There was no mold in the showers, according to Ivey: had there been mold, it would have been treated. He testified that Denise Patent was a certified dietician in charge of food services, and that she was "safe serve" certified. Although he did not personally check the food, he does not believe Ms. Patent would serve moldy food. The hot water machines had been at the jail for the inmates to make instant coffee and Ramen noodles. The machines kept breaking due to the usage by inmates, and they could no longer afford to keep fixing them or to buy new ones. The mirrors on C1 pod were taken out because they were made of flat metal; the inmates learned how to get them off the walls and make shanks. Ivey testified that they stopped putting inmates' food in plastic bags because the inmates kept flushing them down the

toilets. This caused a problem with the sewage system and cost a lot of money to fix. The inmates were issued only one blanket, one face towel, and one jumpsuit due to safety concerns of both the inmates and the officers. Some inmates had used jumpsuits as rope in the past— they could tie other persons up with the "rope" and do other dangerous things with the homemade rope. Ivey testified that bleach was taken out of the pod for safety concerns.

Sheriff Lewis testified that he took office on January 3, 2012. He did not recognize Chandler and he does not believe he ever talked to Chandler. He testified that he hired Denise Patent for the food services position, and that he expects her, and his officers, to perform their duties in a professional manner. He denied the allegations made by Chandler regarding the conditions of the jail.

Pretrial detainees have a due process right not to be subjected to jail conditions that constitute punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). "Punishment" may be "the manifestation of an explicit policy or restriction." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009). It can also be manifested by a *de facto* policy if a pattern of conduct or condition is sufficiently extended or pervasive such that intent to punish may be presumed. *Id.* at 452. Furthermore, the punishment is impermissible only if it bears no reasonable relationship to a legitimate governmental interest and if it causes a violation of a detainee's constitutional rights. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011). A constitutional violation occurs when the complained of condition results in "serious deficiencies" in providing for the detainee's "basic human needs." *Shepherd*, 591 F.3d at 454.

The Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that the conditions in the HCDF were so deficient as to him to constitute an intent to punish him.

Further, he set forth no evidence showing a *de facto* policy at the jail wherein an intent to punish could be presumed. Chandler did receive food, clothing, and medical care. He was treated by physicians or other medical personnel many times while he was housed at HCDF. Although he contends that the conditions caused him injury, his medical records do not confirm this. He complains that he did not receive the shoulder surgery that he needed, but there is no evidence that any delay caused him further substantial injury. Chandler showed no severe weight loss while housed at HCDF and he has no medical problems that are directly connected to his incarceration at HCDF according to his medical records. The proof fails to show that his conditions of confinement constituted punishment and resulted in serious deficiencies in the provision of Chandler's basic human needs.

Chandler has had little association with either named Defendant, and he confirms that he never spoke to Sheriff Lewis. They contend they are entitled to qualified immunity, and the Court agrees. No liability may be established against either Defendant, in either his individual or official capacity, under the evidence presented in this case.

**Conclusion**

As stated, the Court finds that Plaintiff has failed to carry his burden of proof as to his contention that his rights under the United States Constitution were violated due to the conditions in which he was housed at the Hinds County Detention Facility, and this case must be dismissed with prejudice.

IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed with prejudice, and Final Judgment shall be entered on this date in favor of Defendants Michael Ivey and Sheriff Tyrone Lewis.

SO ORDERED, this the 3rd day of November 2014.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE